# EXHIBIT A
## *(State Court Pleadings)*



West Virginia E-Filing Notice

CC-20-2026-C-454

Judge: Stephanie Abraham

**To:**  Megan Patrick
mpatrick@kswvlaw.com

# NOTICE OF FILING

IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA
Nancy Hunter v. Select Portfolio Servicing, Inc.
CC-20-2026-C-454

The following complaintwas FILED on 4/17/2026 2:36:25 PM

Notice Date:    4/17/2026 2:36:25 PM

Cathy S. Gatson
CLERK OF THE CIRCUIT COURT
Kanawha County
P.O. Box 2351
CHARLESTON, WV 25301

(304) 357-0440

**COVER SHEET**

E-FILED | 4/17/2026 2:36 PM
CC-20-2026-C-454
Kanawha County Circuit Clerk
Cathy S. Gatson

## GENERAL INFORMATION

IN THE CIRCUIT COURT OF KANAWHA COUNTY WEST VIRGINIA

**Nancy Hunter v. Select Portfolio Servicing, Inc.**

**First Plaintiff:** ☐ Business  ☑ Individual  ☐ Government  ☐ Other

**First Defendant:** ☑ Business  ☐ Individual  ☐ Government  ☐ Other

**Judge:** Stephanie Abraham

## COMPLAINT INFORMATION

**Case Type:** Civil          **Complaint Type:** Other

**Origin:** ☑ Initial Filing  ☐ Appeal from Municipal Court  ☐ Appeal from Magistrate Court

**Jury Trial Requested:** ☑ Yes  ☐ No     **Case will be ready for trial by:** _____

**Mediation Requested:** ☐ Yes  ☑ No

**Substantial Hardship Requested:** ☐ Yes  ☑ No

☐ Do you or any of your clients or witnesses in this case require special accommodations due to a disability?

    ☐ Wheelchair accessible hearing room and other facilities

    ☐ Interpreter or other auxiliary aid for the hearing impaired

    ☐ Reader or other auxiliary aid for the visually impaired

    ☐ Spokesperson or other auxiliary aid for the speech impaired

    ☐ Other: _____

☐ I am proceeding without an attorney

☑ I have an attorney:  Megan Patrick, 3566 TEAYS VALLEY RD , HURRICANE, WV 25526

## SERVED PARTIES

**Name:**        Select Portfolio Servicing, Inc.

**Address:**     CORPORATION SERVICE COMPANY 808 GREENBRIER STREET, CHARLESTON WV 25311

**Days to Answer:** N/A          **Type of Service:**  No Service

EFILED | 4/17/2026 2:36 PM
CC-20-2026-C-454
Kanawha County Circuit Clerk
Cathy S. Gatson

## IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

NANCY HUNTER,

       **Plaintiff,**

v.                                **Civil Action No.:_____**

**SELECT PORTFOLIO SERVICING, INC.,**

       **Defendant.**

## Complaint

### Preliminary Statement

1. Defendant Select Portfolio Servicing, Inc., ("SPS") is a mortgage-loan servicer that unfairly, unreasonably, and unlawfully threatened foreclosure without considering Nancy Hunter's loan modification application. SPS was required by federal law to review her loan modification application, yet instead refused and pursued foreclosure. To enforce West Virginia and federal law and stop the unlawful foreclosure of her home, Plaintiff brings this action.

### Parties

2. Plaintiff resides in Kanawha County, West Virginia.

3. Defendant SPS is a loan servicer and creditor-debt collector responsible for collecting payments and the charges assessed against Plaintiff and other borrowers' accounts.

### Facts

4. Plaintiff entered into a home-secured mortgage loan in 2005, for property located in Kanawha County, West Virginia.

5. At all times relevant to this action, SPS serviced Plaintiff's loan and collected Plaintiff's loan payments.

6.      Plaintiff became delinquent on her loan and submitted a loan modification application on January 7, 2026.

7.      After not receiving a response for over thirty days, Plaintiff resubmitted her loan modification application on February 12, 2026.

8.      SPS failed to respond to these loss mitigation requests.

9.      SPS did not acknowledge receipt of the application within five days.

10.     SPS did not provide a timely written notice identifying any additional documents needed to complete the application or a reasonable deadline for submission.

11.     SPS did not timely evaluate the application or provide a written determination.

12.     SPS dual-tracked Plaintiff's loan by scheduling a foreclosure despite having received a completed loss mitigation application more than thirty-seven (37) days before the scheduled sale.

13.     Upon information and belief, SPS refused to review Plaintiff's loan modification application due to a prohibition contained in its Pooling and Servicing Agreement.

14.     A Pooling and Servicing Agreement ("PSA") is a contract that typically governs the securitization of mortgage loans and the rights and responsibilities of the servicer, trustee, and depositor.

15.     Plaintiff is not a party to any Pooling and Servicing Agreement.

16.     Plaintiff's contract is the Deed of Trust, which specifically adopts the Real Estate Settlement Procedures Act as applicable law in Definition J and Q.

17.     Definition Q even provides that:

"'RESPA' refers to all requirements and restrictions that are imposed in regard to a 'federally related mortgage loan' even if the Loan does not qualify as a 'federally related mortgage loan' under RESPA."

2

18.    Paragraph 16 of the Deed of Trust further declares that RESPA cannot be waived and any conflicting provisions are subject to RESPA:

> Instrument.
> **16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.
> ... this Security Instrument: (a) words of the masculine gender shall mean and include

19.    Plaintiff's contract with SPS incorporates RESPA and its implementing regulations.

20.    Upon information and belief, SPS assessed occupancy inspection fees to determine whether the property remained occupied.

21.    SPS assessed these fees despite having established that Plaintiff resided in the home due to receiving multiple loss mitigation applications.

22.    West Virginia Code § 46A-2-127(g) prohibits "[a]ny representation that an existing obligation of the consumer may be increased by the addition of attorney's fees, investigation fees, service fees or any other fees or charges when in fact such fees or charges may not legally be added to the existing obligation[.]"

23.    West Virginia Code § 46A-2-128(c) prohibits a debt collector from "collect[ing] or attempt[ing] to collect from the consumer all or any part of the debt collector's fee or charge for services rendered."

24.    Finally, West Virginia Code § 46A-2-128(d) prohibits "[t]he collection of or the attempt to collect any interest or other charge, fee or expense incidental to the principal obligation unless such interest or incidental fee, charge or expense is expressly authorized by the agreement creating the obligation and by statute."

3

## Legal Claims

### Count I
### *Violations of Real Estate Settlement Procedures Act*

25.     Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

26.     RESPA, 12 U.S.C. section 2605 et seq., prohibits a servicer of a federally related mortgage loan from failing to comply with duties imposed by CFPB mortgage-servicing regulations. See 12 U.S.C. section 2605(k)(1)(E).

27.     The CFPB promulgated Regulation X pursuant to RESPA, and 12 U.S.C. section 2605(f) authorizes a private right of action for violations of 12 C.F.R. section 1024.41.

28.     Plaintiff submitted a complete, or at minimum facially complete, loss mitigation application and complied with every request SPS made to complete the application.

29.     Nonetheless, SPS never evaluated Plaintiff for all loss mitigation options available to her.

30.     SPS failed to provide the written acknowledgment required by 12 C.F.R. section 1024.41(b)(2)(i)(B).

31.     SPS failed to exercise reasonable diligence and failed to provide an adequate notice identifying any missing documents or a reasonable deadline, in violation of 12 C.F.R. section 1024.41(b)(1), (b)(2)(i)(B), and (b)(2)(ii).

32.     SPS failed to evaluate Plaintiff for all loss mitigation options available and failed to provide a written determination within 30 days, in violation of 12 C.F.R. section 1024.41(c)(1)(i)-(ii).

33.     Additionally, SPS practiced "dual tracking" when it scheduled a foreclosure sale despite having received a completed loss mitigation application more than 37 days before the scheduled sale, in violation of 12 C.F.R. § 1024.41(g).

4

34. SPS failed to send a notice stating what additional documents or information were necessary and the reasonable date by which Plaintiff had to submit them, in violation of 12 C.F.R. section 1024.41(b)(2)(i)(B) and (b)(2)(ii).

35. SPS failed to exercise reasonable diligence in obtaining documents and information from Plaintiff to complete her loss mitigation application, in violation of 12 C.F.R. 1024.41(b)(1).

36. Once Plaintiff submitted the documents and information SPS identified, SPS was required to treat the application as facially complete for foreclosure-protection purposes. SPS failed to do so, in violation of 12 C.F.R. section 1024.41(c)(2)(iv).

37. Plaintiff submitted a complete, or at minimum facially complete, loan modification application.

38. Plaintiff's application was facially complete because she had submitted all documents and information SPS requested for review. See 12 C.F.R. section 1024.41(c)(2)(iv).

39. SPS failed to evaluate Plaintiff's completed loss mitigation application for all loss mitigation options available to Plaintiff, in violation of 12 C.F.R. section 1024.41(c)(1)(i).

40. SPS refused to review Plaintiff's loss mitigation application at all, even after Plaintiff resubmitted it.

41. SPS dual tracked Plaintiff's loan in violation of 12 C.F.R. 1024.41(g).

42. SPS failed to send notice of completed application within 5 business days containing (1) date servicer received complete application, (2) 30 day timeline to evaluate, and (3) certification that cannot foreclose before evaluating the complete application in violation of 12 C.F.R. 1024.41(c)(3)(i).

5

43.    Plaintiff mailed SPS a notice of error and qualified written request in January 2026.

44.    SPS violated 12 C.F.R. section 1024.35(e)(1)(i) by failing either to correct the asserted errors or conduct a reasonable investigation and provide the written response required by the regulation.

45.    SPS also violated 12 C.F.R. section 1024.36(d)(1) by failing either to provide the requested information or conduct a reasonable search and provide the written response required by the regulation.

46.    Plaintiff suffered actual damages as a proximate result of SPS's RESPA violations.

## Count II
### *Breach of Contract*

47.    Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

48.    Plaintiff's contract with SPS (the Deed of Trust) provides that, before acceleration and foreclosure, SPS must comply with applicable law, including RESPA and its implementing regulations.

49.    Each party to a contract is required to exercise its discretion under the contract in good faith and with fair dealing.

50.    Loss mitigation before foreclosure was standard servicing practice at the time of SPS's conduct.

51.    SPS breached its duties under the contract, including its duties to exercise its discretion in good faith, by:

a.    Ignoring Plaintiff's timely submitted and facially complete loss mitigation applications;

6

b. Following a pooling and servicing agreement that Plaintiff is not a party to over Plaintiff's contract; and

c. providing misleading reasons for refusing to review Plaintiff's loss mitigation application.

52. SPS did not exercise its discretion under the contract in good faith.

53. These actions breached SPS's contractual duties, including the duty to exercise contractual discretion in good faith.

54. SPS's breaches were intentional, wanton, and/or reckless.

55. Plaintiff suffered damages as a proximate result of SPS's breach.

## Relief Sought

Plaintiff seeks the following relief:

1. An injunction prohibiting SPS from engaging in the unlawful conduct described above;

2. An injunction prohibiting SPS from initiating foreclosure proceedings;

3. A declaration that SPS breached the parties' contract in the manner described above;

4. Actual and compensatory damages;

5. Reasonable attorneys' fees and the costs of this action as authorized by applicable law, including 12 U.S.C. section 2605(f)(3);

6. Pre- and post-judgment interest; and

7. All other relief the Court deems appropriate.

**Jury trial demanded.**

NANCY HUNTER
**BY COUNSEL**


/s/ Megan Patrick
Megan Patrick (WVSB #12592)
Benjamin M. Sheridan (WVSB #11296)
Jed Nolan (WVSB #10833)
Klein & Sheridan, LC
3566 Teays Valley Road
Hurricane, WV 25526
T: (304) 562-7111
F: (304) 562-7115
E: megan@kleinsheridan.com
E: ben@kleinsheridan.com
E: jed@kleinsheridan.com

*Counsel for Plaintiff*

8

